COURT OF APPEALS
DECISION
DATED AND FILED

October 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2023AP1561**
**2024AP1119**

Cir. Ct. No.  2021CV24

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

FRIENDS OF STOWER SEVEN LAKES STATE TRAIL, INC., JAMES JUDKINS AND DENISE KAYE,

   PETITIONERS-RESPONDENTS,

 V.

POLK COUNTY AND POLK COUNTY BOARD OF SUPERVISORS,

   RESPONDENTS-APPELLANTS.

---

APPEALS from orders of the circuit court for Polk County: EDWARD F. VLACK III, Judge.  *Order in Appeal No. 2024AP1119 affirmed; Appeal No. 2023AP1561 dismissed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  These consolidated appeals arise out of a petition for common law certiorari review filed by Friends of Stower Seven Lakes State Trail, Inc., James Judkins, and Denise Kaye (collectively, "the Friends") against Polk County and the Polk County Board of Supervisors (collectively, "the County").  The Friends challenged the County's decision to approve a trail plan for the Stower Seven Lakes State Trail that permitted snowmobiles and equestrian uses.  In Appeal No. 2023AP1561, the County appeals the circuit court's decision and order dated July 26, 2023, granting certiorari relief to the Friends, reversing the County's decision to approve the plan, and remanding the matter to the County for further proceedings.  In Appeal No. 2024AP1119, the County appeals the court's amended decision and order dated May 10, 2024, which denied the County's motion for reconsideration and relief under WIS. STAT. § 806.07 (2023-24)[1] and again granted certiorari relief to the Friends.

¶2     By order dated January 10, 2025, we sua sponte consolidated these two appeals for decision.  In Appeal No. 2024AP1119, we affirm the circuit court's amended decision and order granting certiorari relief to the Friends, although we do so on narrower grounds than the circuit court.  We dismiss Appeal No. 2023AP1561 as moot.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

## BACKGROUND[2]

¶3 The Stower Seven Lakes State Trail (hereinafter, "the trail") is located on a former railroad right-of-way in Polk County, Wisconsin. The Wisconsin Department of Natural Resources (DNR) acquired the right-of-way for the trail in 2003. In 2004, the County developed a master plan for the trail but did not fully implement that plan due to a 2008 circuit court decision that prohibited motorized uses on state trails, with certain limited exceptions, under then-applicable law.

¶4 Following changes to the applicable law, the County attempted to revive the 2004 master plan, but the DNR informed the County that it would need to develop a new trail plan. As part of the new planning process, the DNR granted the County a cooperative, nonexclusive easement to the trail on March 22, 2018, and also executed a memorandum of understanding (MOU) with the County. Under the MOU, the County agreed to "coordinate and prepare a plan for the [t]rail … within two years of the conveyance of the easement." The MOU required that the County's plan "be consistent with" WIS. ADMIN. CODE ch. NR 44[3] "to the extent practicable" and further required the County to "make its best efforts to comply with the intent of [ch.] NR 44 … as it relates to public participation."

---

[2] The factual and procedural background for these appeals is lengthy. The circuit court amply detailed this background in its 467-page order, but it also observed that there are only a "few contested material facts" in this case. We will therefore briefly summarize the facts leading up to these appeals and will add additional details as necessary when addressing the parties' arguments.

[3] All references to WIS. ADMIN. CODE ch. NR 44 are to code provisions that are unchanged through the November 2024 register.

¶5     On March 20, 2018, the Polk County Board of Supervisors ("the Board") adopted Resolution 28-18, in which the Board agreed to carry out the trail planning process in accordance with the terms of the easement and the MOU. Specifically, Resolution 28-18 provided that "[t]he comprehensive planning process authorized herein and the trail plans prepared through such process shall be consistent with [WIS. ADMIN. CODE ch. NR 44] to the extent practicable and the applicable terms and conditions of the" MOU.

¶6     After a planning process that included opportunities for public input, the Board passed Resolution 20-20[4] on July 21, 2020, in which the County resolved to submit a 16-page trail plan to the DNR that permitted snowmobile and equestrian uses.[5]  On November 13, 2020, the DNR advised the County that the July 2020 version of the trail plan "contains inconsistencies between the goals and objectives and the chosen alternatives."  The DNR expressed particular concern about whether the plan's recommendation to add snowmobile and equestrian uses was consistent with the plan's stated goals and objectives.  The DNR referred to other aspects of the plan as "problematic" and further noted that "other information required by the MOU appears to be missing."  In a subsequent memorandum dated December 3, 2020 (hereinafter, "the December 3 memo"), the DNR provided further detail regarding these issues.

---

[4] Resolution 20-20 states that the County conducted "a robust planning process that involved … substantial public input through stakeholder meetings, open houses, input surveys, and public hearings."  The Friends dispute whether the County provided adequate opportunities for public participation prior to the adoption of Resolution 20-20.  We will discuss the parties' dispute regarding the adequacy of public participation in Section II.A of this opinion.

[5] In 2019, the DNR rejected a prior draft of the plan because the County did not comply with the MOU's requirement that the County undertake an adequate planning process.

¶7      The DNR and the County worked together over the next several weeks to make revisions to the July 2020 version of the trail plan. These revisions resulted in a 25-page plan and that included, among other things, the addition of a winter-use pedestrian trail. According to the DNR, the revised version of the plan "adequately addressed the issues that were identified in" the DNR's December 3 memo.

¶8      The proposed revisions to the trail plan—which the County referred to as "clarifying and explanatory edits"—were included among several unrelated agenda items at two public meetings: the County's Environmental Services Committee meeting on January 6, 2021, and the Board meeting on January 19, 2021. At both meetings, public comments for all agenda items were limited to 30 minutes in total, and 3 minutes per person. At the January 19 meeting, the Board adopted Resolution 02-21, in which the Board voted to "accept[] and approve[] these edits and affirm[] the adoption of the" revised trail plan.

¶9      On January 21, 2021, the Friends filed a petition for certiorari review against the County, raising a variety of challenges to the County's decision to approve the revised trail plan. *See* Polk County Circuit Court Case No. 2021CV24. In a separate action against the DNR that is not part of this appeal, the Friends sought certiorari relief under WIS. STAT. ch. 227. *See* Polk County Circuit Court Case No. 2021CV38. Both cases were assigned to the same circuit court judge.

¶10      On July 16, 2023, the circuit court granted the Friends' petition for certiorari relief against the County, reversed the County's approval of the revised trail plan, and remanded the matter to the County for further proceedings. As part of its 268-page decision and order, the court explained that it "was not able to

open the flash drive that was supposed to have contained the record in this case." Instead, the court used the record for Polk County Circuit Court Case No. 2021CV38. Part of the reason the court initially remanded the case back to the County was because the record from Polk County Circuit Court Case No. 2021CV38 was not sufficient to resolve all of the issues raised by the Friends.

¶11 On August 15, 2023, the County filed a motion for "reconsideration and relief" in the circuit court, pursuant to WIS. STAT. § 806.07(1)(h), arguing that the court erred by relying on the record compiled in Polk County Circuit Court Case No. 2021CV38. The County further argued that the court erred by not considering whether the Friends had standing and also "did not afford the County's actions the presumption of correctness to which they were entitled under state law."[6]

¶12 On August 25, 2023, while the County's motion for reconsideration was pending, the County filed a notice of appeal from the circuit court's order granting the Friends' petition for certiorari relief. After we docketed the County's appeal as Appeal No. 2023AP1561, the County filed a motion in the circuit court seeking to stay its order reversing the County's approval of the plan pending that

---

[6] As the Friends argued in their opposition to the motion for reconsideration, the County's motion relied, in part, on new arguments regarding standing. The Friends contended that the County had forfeited these arguments by failing to make them prior to the circuit court's initial decision. *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612. Even though the circuit court recognized that the County was making new arguments, the court opted to address them.

We note our overall disfavor with the County apparently using its motion for reconsideration as a proverbial attempt to get "two kicks at the cat" on the merits of various arguments. Still, because the circuit court chose to address the County's new arguments within the context of disposing of the County's motion for reconsideration, we do the same in these consolidated appeals.

appeal. The County argued that a stay was "necessary to avoid the substantial and irreparable harm that will occur to the County and the public if the public policy of the County—that snowmobiling and horseback riding should be allowed on the Trail pursuant to the Final Plan—is not effectuated while this appeal is pending."

¶13 The circuit court heard oral argument on the County's motions on September 28, 2023. At a hearing five days later, the court "informed the parties that the Court was staying the July 26, 2023 order with respect to equestrians pending the Court's decision on the pending motion for reconsideration and relief." Even though the circuit court was planning to take action on the County's motion for reconsideration, the County did not seek a stay in Appeal No. 2023AP1561.

¶14 On May 10, 2024, the circuit court responded to the County's motion for reconsideration and relief by issuing an amended decision and order. Using the correct record, the court again granted the Friends certiorari relief, but it also ruled differently on some of the issues raised by the Friends.

¶15 On June 10, 2024, the County filed a notice of appeal of the circuit court's May 10, 2024 amended decision and order, and we docketed this second appeal as Appeal No. 2024AP1119. By order dated June 18, 2024, we placed Appeal No. 2023AP1561 (which by then had been submitted on briefs) on hold while the parties briefed Appeal No. 2024AP1119. By order dated January 10, 2025, we lifted the hold on Appeal No. 2023AP1561 and consolidated it with Appeal No. 2024AP1119 for the purposes of disposition.

¶16 Because we are only reviewing the circuit court's amended decision and order dated May 10, 2024, we now dismiss Appeal No. 2023AP1561 as moot.[7]

## STANDARD OF REVIEW

¶17 The circuit court's amended decision and order of May 10, 2024, resulted from the County's motion for reconsideration under WIS. STAT. § 806.07. Typically, a decision to grant relief under § 806.07 is "'within the discretion of the circuit court,' which we review under the erroneous exercise of discretion standard." *See Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493 (citation omitted). Here, however, both parties agree that we should review the circuit court's amended decision and order using the same standard that we use for decisions granting or denying certiorari relief in the first instance. We agree that the amended decision and order is the operative one for this case, having superseded the earlier, July 26, 2023 order.

---

[7] We question why the County did not seek to stay Appeal No. 2023AP1561 once it became clear that further proceedings were occurring that would result in a new operative decision and order in this case. Specifically, during the hearing on September 28, 2023, the circuit court stated that it agreed with the County's argument in its motion for reconsideration and relief that the court had erred by not using the correct record. Then, at the hearing on October 2, 2023, the court informed the parties that it would be issuing a new written decision based on the correct record.

Instead of seeking a stay of its pending appeal, the County inexplicably proceeded to fully brief Appeal No. 2023AP1561, including the same issue raised in its pending motion for reconsideration. Because the County never sought a stay, this court spent substantial time and resources reviewing 130 pages of briefing and 731 pages of appendices in Appeal No. 2023AP1561—an effort that we later learned was largely unnecessary when the County subsequently filed a new appeal regarding the circuit court's amended decision and order. We admonish the County for wasting court resources in this manner.

¶18  "On an appeal from a judgment on certiorari, we review the actions of the [municipality], not the circuit court." *State ex rel. Anderson v. Town of Newbold*, 2019 WI App 59, ¶7, 389 Wis. 2d 309, 935 N.W.2d 856. "[H]owever, we benefit from the circuit court's analysis." *State ex rel. McElvaney v. Schwarz*, 2008 WI App 102, ¶6, 313 Wis. 2d 125, 756 N.W.2d 441.

¶19  "[O]n certiorari review, there is a presumption of correctness and validity to a municipality's decision." *Voters with Facts v. City of Eau Claire*, 2018 WI 63, ¶71, 382 Wis. 2d 1, 913 N.W.2d 131 (citation omitted). "[T]he petitioner bears the burden to overcome the presumption of correctness." *Ottman v. Town of Primrose*, 2011 WI 18, ¶50, 332 Wis. 2d 3, 796 N.W.2d 411.

## DISCUSSION

¶20  In a certiorari action, our review is limited to: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the municipality might reasonably make the order or determination in question. *See id.*, ¶35. The Friends sought certiorari relief on all four grounds, and the parties address each of these four grounds in their briefs to this court.

## I.  Did the County keep within its jurisdiction?

¶21  The question of whether the County kept within its jurisdiction "requires the … [circuit] court to determine whether the [County] acted within the scope of its powers." *See State ex rel. Ruthenberg v. Annuity & Pension Bd .of Milwaukee*, 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979). This determination is a

9

question of law that we review "independently from the determinations rendered by the [County] or the circuit court." *See Ottman*, 332 Wis. 2d 3, ¶54.

¶22    The circuit court concluded that it was unable to resolve the issue of whether the County kept within its jurisdiction, and, therefore, it granted the Friends certiorari relief on this issue.  In determining that this issue was unresolved, the court focused on a potential dispute between the County and the City of Amery ("the City") over their respective involvement with and control over the trail.  In doing so, the court took judicial notice of a letter to the DNR dated November 28, 2018, jointly issued by the County and the City.  In the letter, the County and the City stated that they had different planned uses for the trail and sought the DNR's guidance regarding their respective authority.  Because the record did not contain any response from the DNR or any other indication that the County and the City had resolved their disagreement, the circuit court concluded that it was not clear whether the County had kept within its jurisdiction, especially vis-à-vis the City.

¶23    On this issue, the County argues that the circuit court erred in three respects: (1) by taking judicial notice of the 2018 letter; (2) by treating the letter as evidence that the County lacked authority to prepare the trail plan; and (3) by overlooking the County's authority under its easement from the DNR.[8]

---

[8] In Appeal No. 2023AP1561, the County also argued that the circuit court did not apply the presumption of correctness when it determined that the County did not keep to its jurisdiction. The County did not renew this particular argument in Appeal No. 2024AP1119.  Because we rule in favor of the County on this aspect of the Friends' challenge, we need not address the presumption of correctness.

¶24 Regarding the County's first argument, our supreme court has explained that "the taking of judicial notice of public documents by circuit courts on certiorari has … been recognized in proper circumstances." *State ex rel. General Motors Corp. v. City of Oak Creek*, 49 Wis. 2d 299, 317, 182 N.W.2d 481 (1971). The County contends that the circuit court should not have considered the 2018 letter "because it was irrelevant to the arguments the Friends made below." We disagree. The County's communications with local communities regarding the trail are relevant to several issues in this case.

¶25 We agree, however, with the County's remaining arguments that the circuit court erred by failing to conclude that the County kept within its jurisdiction. As the County points out, "the Trail and the property on which it is located is state land owned by the DNR." The DNR gave the County an easement providing that "[t]he County shall have the right to develop, construct, maintain, operate and repair, a recreational trail … known as the 'Stower Seven Lakes State Trail' for the purpose of bicycling, walking, snowmobiling or other mutually agreed upon [compatible] uses, as determined through the trail planning process as referenced in the" MOU. Thus, the County's act of preparing and approving a trail plan that permitted snowmobiling and other mutually agreed uses was within the scope of its powers as delegated by the DNR. *See Ruthenberg*, 89 Wis. 2d at 472.

¶26 The County further argues that the City had no rights over any portion of the trail because "a city cannot use government, state, or county property within its limits." *See Town of Madison v. City of Madison*, 269 Wis. 609, 622, 70 N.W.2d 249 (1955). We see nothing in the Friends' brief to suggest that the County is incorrect in this regard.

11

¶27    The Friends argue that the record does not demonstrate whether the conflict between the County and the City was resolved. On the contrary, the Friends contend that the "DNR's unexplained sign-off … did not address this issue or even mention the City's plan" for the trail.[9] The Friends' arguments go nowhere, however, given our conclusion that the easement and the MOU gave the County the authority to develop the trail plan. The 2018 letter is not evidence that the County had somehow ceded its authority under the MOU and the easement to the City.

¶28    The Friends also argue that the MOU itself imposed obligations on the County to "cooperate with landowners and communities through which the trail passes." The Friends appear to be arguing that the County's failure to defer to the City's proposal for the trail means that the County did not fulfill its obligation to cooperate. The County urges us to reject this line of argument because this obligation to "cooperate" should not be construed as giving the City or any other landowner a veto power over the County's effort to develop a trail plan in accordance with its authority under the easement and MOU. We agree with the County that, in the face of conflicting desires for the trail, the County did not act outside its jurisdiction when it "[chose] a plan supported by some but opposed by others."

---

[9] We disagree with the Friends' contention that the DNR did not explain its decision to approve the revised plan, at least as it pertains to the City. In its December 3 memo, the DNR reviewed whether the County complied with WIS. ADMIN. CODE § NR 44.04(7)(b), which provides, "As appropriate to the circumstances of each planning process, … the department shall consult with federal, state, county, town and local units of government." The DNR noted that the City was "consulted" and did not express any concern about whether this consultation was adequate.

¶29    For these reasons, we conclude that the County acted within its jurisdiction when it approved the revised trail plan on January 19, 2021. The circuit court erred by granting certiorari relief on this basis.

## II. Did the County proceed on a correct theory of law?

¶30    "A [municipality] proceeds on a correct theory of law when it relies on the applicable [legal authorities] and applies them properly." ***Edward Kraemer & Sons, Inc. v. Sauk Cnty. Bd. of Adjustment***, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994). Whether the County proceeded on a correct theory of law is a question of law that we review "independently from the determinations rendered by the [County] or the circuit court." *See **Ottman***, 332 Wis. 2d 3, ¶54.

¶31    The circuit court granted certiorari relief on this issue because it determined the County did not comply with the public participation requirements of WIS. ADMIN. CODE § NR 44.04(7) or with the requirements in § NR 44.04(9) regarding the goals and objectives for the trail plan.[10] The court further determined that the County's conduct with respect to the trail did not "meet or exceed … any applicable standards mandated by state or federal law." The County challenges each of these determinations on appeal, while the Friends make additional arguments that draw on other provisions of WIS. ADMIN. CODE ch. NR 44, as well as WIS. ADMIN. CODE § NR 1.61 (Nov. 2024).[11]

---

[10] The circuit court cited WIS. ADMIN. CODE § NR 44.07 at several points in its decision to grant certiorari. We agree with the County that these references to § NR 44.07 were typographical errors and were intended to be to § NR 44.04.

[11] All references to WIS. ADMIN. CODE ch. NR 1 are to code provisions that are unchanged through the November 2024 register.

¶32    As a threshold matter, the County argues that the Friends generally lack standing to seek certiorari relief on whether the County complied with any aspect of WIS. ADMIN. CODE chs. NR 44 and NR 1. "Standing presents a question of law for our de novo review." *Metropolitan Builders Ass'n of Greater Milwaukee v. Village of Germantown*, 2005 WI App 103, ¶12, 282 Wis. 2d 458, 698 N.W.2d 301. "[C]ourts should construe the law of standing in Wisconsin liberally," and "public policy should play a role in that construction." *Id.*, ¶15.

¶33    "[T]he Wisconsin rule of standing ha[s] two parts: first, whether the challenged action caused direct injury to the petitioner's interest and second, whether the interest affected was one recognized by law." *Id.*, ¶13.[12]  Here, the Friends argue that they have experienced "physical and economic injury as well as injury to 'aesthetic, conservational, and recreational interests.'"  The circuit court concluded that the Friends satisfied the injury requirement for standing, and we see no argument from the County that the court erred in its analysis of this part of the test for standing.

¶34    Instead, the County argues that establishing an injury "is only the first step in the standing inquiry."  The County contends that the Friends have failed to satisfy the second step of the test for standing—namely, whether their affected interests are "recognized by law." *See id.*

---

[12] The Friends question the applicability of this test, arguing that our decision in *Metropolitan Builders Ass'n of Greater Milwaukee v. Village of Germantown*, 2005 WI App 103, 282 Wis. 2d 458, 698 N.W.2d 301, never analyzed whether the standing test for certiorari petitions under WIS. STAT. ch. 227 should be the same for common law certiorari petitions. We are bound by *Metropolitan Builders*.

¶35     The Friends argue that WIS. ADMIN. CODE chs. NR 1 and NR 44 protect "their recreational and environmental interests and their ability to participate in processes related to those interests." The Friends also point to the definition of "affected or interested parties" in WIS. ADMIN. CODE § NR 44.04(1)(a), which encompasses "those persons or groups who are affected by a master plan or project." § NR 44.04(1)(a).

¶36     The County argues that even if these code provisions establish that the Friends have a legally protected interest, the County's obligation to comply with these provisions only arises under the MOU and not under the administrative code itself. The County contends that the Friends do not have standing to enforce the terms of the MOU. *See* ***Goossen v. Estate of Standaert***, 189 Wis. 2d 237, 249, 525 N.W.2d 314 (Ct. App. 1994) (stating that "a contract cannot be enforced by a" nonparty).

¶37     The County's argument overlooks the fact that the Board adopted Resolution 28-18, which stated that the County's planning process "shall be consistent with [WIS. ADMIN. CODE ch.] NR 44 to the extent practicable and the applicable terms and conditions of the" MOU between the County and the DNR. Thus, to the extent that the provisions of ch. NR 44 and the MOU help protect the Friends' interests, it follows that the Friends have a legally protectable interest in enforcing the County's compliance with the County's own resolution.

¶38     The County further contends that, in the face of the DNR's approval of the January 2021 version of the trail plan, the Friends lack standing because their challenge is an impermissible "collateral attack on a discretionary DNR determination involving questions of fact." This argument is a nonstarter because we are reviewing the County's decision to approve the revised trail plan in

Resolution 02-21, and whether that plan was consistent with WIS. ADMIN. CODE ch. NR 44 "to the extent practicable and the" MOU, as the County had previously resolved in Resolution 28-18. The County has not developed any argument to suggest that the DNR's subsequent approval of the trail plan can shield the County from certiorari review for its own decisions. At most, the DNR's approval is evidence in support of the County's compliance on the merits of certiorari review.

¶39 The County also contends that our supreme court's decision in *Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶¶41-45, 402 Wis. 2d 587, 977 N.W.2d 342, forecloses the Friends' arguments that they have standing.

¶40 *Friends of Black River Forest* involved a challenge under WIS STAT. ch. 227 to the DNR's decision to engage in a land swap with a private entity. *Friends of Black River Forest*, 402 Wis. 2d 587, ¶1. In concluding that the petitioner in that case lacked standing, our supreme court rejected a more general standing inquiry, explaining, "We ground our decision instead in our well-established formulation for standing to challenge administrative decisions." *Id.*, ¶2. This inquiry required the court to determine "whether [the] petition on its face states 'facts sufficient to show that the petitioner named therein is aggrieved … by the decision sought to be reviewed.'" *Id.*, ¶10 (citation omitted).

¶41 The Friends argue that the holding in *Friends of Black River Forest* is specific to a WIS. STAT. ch. 227 action against an administrative agency and does not bar their common law certiorari action against the County. We agree. The requirement that a certiorari petitioner be "aggrieved" by the administrative decision comes directly from the text of ch. 227. *See* WIS. STAT. § 227.53(1) ("Except as otherwise specifically provided by law, any person aggrieved by a decision specified in [WIS. STAT. §] 227.52 shall be entitled to judicial review of

the decision as provided in this chapter ….").  In contrast, this case involves a common law certiorari petition in which the Friends are challenging the County's compliance with a Board resolution in which the County committed itself to a particular process intended to protect the interests of stakeholders such as the Friends.

¶42  The County contends that the fact "[t]hat this is a common law certiorari proceeding, and not a [WIS. STAT. ch.] 227 proceeding, does not affect this analysis," but the County does not develop any argument that a standing analysis expressly grounded in the text of ch. 227 would apply identically to an action at common law.  Given our obligation to construe standing liberally and take public policy into account, *see Metropolitan Builders*, 282 Wis. 2d 458, ¶12, we decline to apply *Friends of Black River Forest* beyond the context of ch. 227.  Instead, we will address below the Friends' arguments that they have standing to challenge the adequacy of the County's compliance with specific provisions of the administrative code.  *See generally Friends of Black River Forest*, 402 Wis. 2d 587, ¶23 (A standing "inquiry requires us to 'examine a specific statute to determine standing.'" (citation omitted)).

¶43  Finally, the County argues that it is illogical to conclude that the Friends have standing to challenge the County's actions but lack standing to challenge the DNR's actions, as the circuit court determined in Polk County Circuit Court Case No. 2021CV38.  We reject this argument because we are not reviewing the court's standing decision in Case No. 2021CV38, which challenged the DNR's action under WIS. STAT. ch. 227.  Instead, we are conducting a de novo review of the court's standing decision in Polk County Circuit Court Case No. 2021CV24, which challenges the County's decision to approve the revised

trail plan. As explained above, there is no inherent logical inconsistency with having different standing principles in these disparate contexts.

### A. *Public Participation under* WIS. ADMIN. CODE *§ NR 44.04(7)*

¶44 The County argues that the circuit court erred by granting certiorari relief under WIS. ADMIN. CODE § NR 44.04(7). The court concluded that the Friends "met their burden [for certiorari relief] on the issue of the lack of public participation." The court focused specifically on the time period between Resolution 20-20—in which the County adopted the July 21, 2020 version of the trail plan—and Resolution 02-21—in which the County approved the revised plan on January 19, 2021. The court determined that the County did not permit public participation to the extent practicable during this period.

¶45 The County argues that it "was not required to comply with [WIS. ADMIN. CODE ch.] NR 44 when planning for the Trail." We disagree. As we explained earlier, the Friends' certiorari challenge addresses whether the County complied with Resolution 28-18, which provided that "[t]he comprehensive planning process authorized herein and the trail plans prepared through such process shall be consistent with [ch. NR 44] to the extent practicable and the applicable terms and conditions of the" MOU. The MOU specifically required the County to "make its best efforts to comply with the intent of [ch.] NR 44 … as it relates to public participation."

¶46 The County further argues that the Friends lack standing to challenge the County's compliance with WIS. ADMIN. CODE § NR 44.04, specifically. *See* ***Friends of Black River Forest***, 402 Wis. 2d 587, ¶41 (concluding that the code provisions relied on by the petitioners, "including § NR 44.04 …, dealing with procedures for … the master plan process, do not protect,

recognize or regulate any interests of the petitioners sufficient for standing under WIS. STAT. §§ 227.52 and 227.53"). The Friends argue that our supreme court's determination in *Friends of Black River Forest* rested, in part, on its observation that "[t]he Friends [of Black River Forest's] argument regarding WIS. ADMIN. CODE § NR 44.04 as a source for its claims is not well-developed." *See Friends of Black River Forest*, 402 Wis. 2d. 587, ¶44. In contrast, in this case, the Friends contend that they have presented a more developed argument for why this provision gives rise to a legally protectable interest.

¶47 We agree that the Friends in the present case have a stronger argument for standing than the petitioners did in *Friends of Black River Forest*. Specifically, in concluding that the petitioners in *Friends of Black River Forest* lacked standing under WIS. ADMIN. CODE § NR 44.04, our supreme court explained that "[n]owhere in the amended petition do the Friends assert they were denied opportunities to participate throughout the planning process." *Friends of Black River Forest*, 402 Wis. 2d 587, ¶44. In contrast, the Friends in the present case allege that there were points in the planning process when the County restricted participation altogether, such as by refusing to permit live testimony at public hearings and, especially, by failing to hold adequate public meetings between the adoption of the draft trail plan in July 2020 and the approval of the revised trail plan in January 2021.

¶48 The County contends that the Friends were nonetheless able to make their views known by submitting written comments. Accordingly, the County argues that the Friends cannot establish the necessary element of prejudice. *See State ex rel. DeLuca v. Common Council of Franklin*, 72 Wis. 2d 672, 695, 242 N.W.2d 689 (1976) (noting that the petitioner in a certiorari action has "not only the burden of showing that the action complained of was erroneous, but also of

19

showing that it was actually or probably prejudicial to a material degree"). In its reply brief, the County contends that the Friends have conceded that they did not experience prejudice.

¶49 We disagree with all of the County's assertions in this regard. It is plain that, in this case, the Friends are arguing that there were critical points in the planning process where the County did not make its best efforts to permit public participation. If the Friends are correct on the merits of this argument, we can readily conclude that this lack of public participation was "probably prejudicial to a material degree." *See id.*

¶50 Moreover, the County's argument that the Friends had adequate opportunities to participate goes to the merits of whether the County satisfied its commitment under the MOU and Resolution 28-18 to "make its best efforts to comply with the intent of [WIS. ADMIN. CODE ch.] NR 44 … to the extent practicable as it relates to public participation." The County's argument does not, however, foreclose the Friends' standing to raise this issue.

¶51 The County further argues that the adequacy of the public participation is not reviewable because common law certiorari cannot be used to review questions of fact. The only authority the County cites for this proposition is *Berschens v. Town of Prairie du Sac*, 76 Wis. 2d 115, 119, 250 N.W.2d 369 (1977). *Berschens* involved a petition for certiorari review pursuant to WIS. STAT. § 80.34 (1973-74). *See Berschens* 76 Wis. 2d at 119. *Berschens* states: "The court may not, upon a common law writ of certiorari, go beyond defects appearing in the record to review questions of fact." *Id.* (citing *Morris v. Ferguson*, 14 Wis. 266, 268 (1861)). The Friends, however, are not asking us to look beyond defects appearing in the record, so the cited text does not support the County's

proposed limit on the scope of our review. The alleged failures of public participation are discernable from the record.

¶52 The County also argues that the DNR's ultimate approval reflects a determination that the County did make its best efforts to comply with WIS. ADMIN. CODE § NR 44.04(7) to the extent practicable. The County contends that this issue of "best efforts" is therefore a factual determination within the DNR's discretion. *See **Wisconsin Indus. Energy Grp. v. PSC***, 2012 WI 89, ¶48 n.11, 342 Wis. 2d 576, 819 N.W.2d 240 (observing that the "qualification 'to the extent practicable' affords the PSC … discretion");[13] *see also **Franklin v. Housing Auth. of Milwaukee***, 155 Wis. 2d 419, 424-25, 455 N.W.2d 668 (Ct. App. 1990) (stating that a common law certiorari proceeding "cannot be used to review an agency's exercise of legislative or judicial discretion"). We reject the County's reliance on these decisions because we are reviewing *the County's* determination that it complied with the specified administrative code provisions to the extent practicable. We see nothing in these decisions to suggest that the DNR's ultimate determination would shield the County from certiorari review, and certainly not in relation to the Friends' standing.

¶53 Turning now to the merits of the parties' arguments, the circuit court relied on Section V of the MOU, which requires the County to "participate in or conduct public meetings … for any major changes to the trail plan, such as

---

[13] With the edited portions of the quote restored, the sentence cited by the County reads, "[T]he qualification, 'to the extent practicable,' affords the PSC sufficient discretion to determine, in the context of an application for an out-of-state facility, whether the use of brownfields, either in Wisconsin or out of state, is 'practicable.'" ***Wisconsin Indus. Energy Grp. v. PSC*** 2012 WI 89, ¶48 n.11, 342 Wis. 2d 576, 819 N.W.2d 240. This sentence is context specific and does not state a general rule that agency decisions based on the phrase "to the extent practicable" are beyond review.

eliminating or adding allowed trail uses or authorizing special events not addressed by the trail plan." The court concluded that adding nine new pages of content to the plan, including the addition of the winter-use pedestrian trail, constituted a "major change" that required public meetings. The County contends that these additions were not "major changes," but it does not develop any argument to undermine the circuit court's determination. Like the circuit court, we fail to see how expanding the plan from 16 pages to 25 pages and adding a new winter-use pedestrian trail would not qualify as a "major change."[14]

¶54 We therefore agree that under the MOU, the County was required to conduct public meetings before approving the revised plan. Because the County did not hold public meetings regarding the proposed changes, we conclude that the County did not make its best efforts to comply with WIS. ADMIN CODE § NR 44.04(7) to the extent practicable. We see no argument from the County that it was not practicable to hold further public meetings regarding these changes.

¶55 The County further argues that the circuit court erred by focusing on opportunities for public participation between the County's adoption of the draft trail plan on July 21, 2020, and its approval of the revised trail plan on January 19, 2021. The County contends that we should instead consider the cumulative opportunities for public participation throughout the entire process. We have

---

[14] The County's reliance on the presumption of correctness does not change our analysis because this presumption is not intended to "eviscerate[] meaningful review" of a municipality's decision. *See Ottman v Town of Primrose*, 2011 WI 18, ¶51, 332 Wis. 2d 3, 796 N.W.2d 411. Our supreme court has explained that the presumption of correctness does not apply where the municipality's interpretation "contravene[s] the plain language of [the applicable authorities], … is contrary to any other law or … lacks a rational basis." *See id.*, ¶75. Here, the County fell short in each regard when it determined that the revisions to the trail plan were not major changes requiring public meetings.

already concluded that the County ultimately added nine additional pages of content to the July 21, 2020 draft plan and a new use of the trail, without holding any additional public meetings as required by the MOU. We agree with the Friends that "[p]ublic participation before this content was added necessarily could not weigh in on the new content." By not holding any public meetings before approving the revised trail plan, the County did not adhere to the MOU, nor did the County satisfy its commitment to comply with WIS. ADMIN. CODE § NR 44.04(7) to the extent practicable.[15]

¶56 For these reasons, we affirm the circuit court's order granting the Friends certiorari relief on the issue of whether the County proceeded on a correct theory of law when it approved the revised trail plan without adequate public participation.

¶57 Although we are affirming the circuit court's decision on this basis only, we will also address the Friends' remaining arguments that the County did not proceed on a correct theory of law. While we strictly need not address these issues, the parties fully briefed them, the circuit court addressed them, and we wish to provide clarity on remand.

B. *Goals and Objectives under* WIS. ADMIN. CODE § NR 44.04(9)

---

[15] Alternatively, the Friends argue that even if we were to consider the cumulative opportunities for participation, the entire process was deficient. Specifically, the Friends point to the DNR's December 3 memo, which identified several deficiencies in the County's public participation process leading up to the July 2020 proposed plan. The County argues that the DNR merely provided "notes" in its December 3 memo and that these "notes" should not be construed as deficiencies. The County further argues that the DNR's ultimate approval of the plan shows that the overall public participation was adequate. Because we agree with the Friends that participation opportunities prior to the approval of the July 2020 plan are not relevant to this analysis, we need not address the Friends' alternate argument that those opportunities were themselves inadequate.

¶58    The circuit court also determined that the County failed to comply with WIS. ADMIN. CODE § NR 44.04(9). Specifically, para. (a) of this code provision requires that a plan include "[a] statement of general goals and objectives for management and use." Sec. NR 44.04(9)(a)2. Here, the DNR's December 3 memo identified several inconsistencies between the July 2020 version of the plan and the County's stated goals and objectives. The circuit court remanded the matter to the County because neither the DNR nor the County explained how the revisions in the January 19, 2021 trail plan addressed these inconsistencies.[16]

¶59    The County argues that the issue of whether it complied with WIS. ADMIN. CODE § NR 44.04(9) "to the extent practicable" raises "a fact question not suited for certiorari." We have already rejected this argument that the County's compliance with Resolution 28-18 is unreviewable. The County also argues that the Friends lack standing to challenge compliance with this particular provision of the administrative code because nothing in § NR 44.04(9) indicates that this code provision is intended to protect individual interests. We will assume without deciding that the Friends have standing to seek certiorari relief on this ground because we agree with the County's arguments on the merits.

---

[16] The circuit court appears to have based its decision on inconsistencies between the plan and all eight of the objectives identified by the County. In their brief to this court, the Friends address inconsistencies between the plan and Objectives 1 through 6. The County argues that during the planning process, the Friends only raised specific challenges to the plan's consistency with Objectives 1 and 6. Accordingly, the County asks us to conclude that the Friends have not preserved their arguments regarding Objectives 2 through 5. *See State v. Outagamie Cnty. Bd. of Adjustment*, 2001 WI 78, ¶55, 244 Wis. 2d 613, 628 N.W.2d 376 ("Ordinarily an appellate court will not consider issues beyond those properly raised before the administrative agency."). Like the circuit court, we deem the Friends to be making a more general challenge to the County's compliance with WIS. ADMIN. CODE § NR 44.04(9), so we decline to limit the scope of the Friends' argument in the manner proposed by the County.

¶60    Specifically, we agree with the County's argument that nothing in WIS. ADMIN. CODE § NR 44.04(9) requires that the plan be perfectly consistent with each of the stated goals and objectives.  That commonsense limitation, coupled with the further limitation that the County only needed to comply "to the extent practicable," means that the County's decision is entitled to the presumption of correctness.  *See Ottman*, 332 Wis. 2d 3, ¶75 (municipality was entitled to the presumption of correctness where petitioners did not satisfy their burden to demonstrate that the municipality's interpretation of the applicable law was "unreasonable").  We further agree with the County that the circuit court erred by relying on the fact that the DNR did not "itemize how the 'updated master plan' adequately addressed the issues that were identified in" its December 3 memo. This aspect of the court's determination failed to apply the presumption of correctness and, as the County argues, improperly "placed the burden on the County to explain how the revisions it made in the Final Plan addressed the DNR's comments in the December 3, 2020 memorandum."

¶61    Finally, even if we were to address the inconsistencies between the revised trail plan and the plan's stated goals and objectives, the Friends' arguments center on whether the addition of the winter-use pedestrian trail is an effective way to satisfy the plan's goals and objectives.  The County argues that these arguments are "fact-bound … and require the Court to substitute its own judgment for the County."  We agree that the Friends are asking us "to review a determination that is entrusted to the discretion of the municipality."  *See Ottman*, 332 Wis. 2d 3, ¶52.  "If the municipality applied the correct legal standards and reached a decision that is not arbitrary, oppressive, or unreasonable, we will not upset a municipality's discretionary determination."  *Id.*  Accordingly, while the Friends' argument may relate to other potential grounds for certiorari review, this

argument does not affect our determination of whether the County proceeded according to a correct theory of law.

### C. Other Provisions of WIS. ADMIN. CODE ch. NR 44

¶62    The Friends further argue that the revised trail plan did not comply with several other provisions of WIS. ADMIN. CODE ch. NR 44. Specifically, the Friends argue that the trail plan lacks a regional analysis, as required by § NR 44.04(8)(d), and supporting data, as required by § NR 44.04(9)(a)4. In addition, the Friends contend that the County failed to use the land management classification system described in § NR 44.04(5), failed to include other "require[d] plan components" set forth in WIS. ADMIN. CODE § NR 44.06(3), and did not use the "subclassifications for recreational uses in [WIS. ADMIN. CODE § NR] 44.07 … including road and trail standards in [§] NR 44.07(3)."

¶63    The County argues that the Friends "never raised these issues to the Board, and have waived them." The circuit court agreed with the County "that if the [Friends] did not previously raise issues about compliance with other provisions of [WIS. ADMIN. CODE ch.] NR 44 that were not included in the December 3 [memo], the [Friends] are barred from raising them now." The court concluded that the Friends "have not claimed to have previously raised these issues of compliance with other provisions of [ch.] NR 44." Accordingly, the court did not consider these arguments.

¶64    In their brief to this court, the Friends did not address the circuit court's determination that they are barred from making these new arguments. We therefore see no basis for questioning the circuit court's denial of certiorari relief on these issues.

*D. Keeping the Trail Open for Walking under* WIS. ADMIN. CODE
*§ NR 1.61*

¶65     The Friends argue that the revised trail plan violates WIS. ADMIN. CODE § NR 1.61(1), which requires that "all department land shall be open for … [t]raditional outdoor recreational uses, including … walking."[17]  The MOU requires that, pursuant to § NR 1.61, "[w]alking must be allowed on the property at all times."  The Friends contend that this provision of the MOU requires that "other uses must be compatible with walking."  The Friends argue that the plan falls short in this regard because the County has acknowledged that permitting snowmobiles means that "[a] substantial percentage of people walking … will be displaced."  The Friends also point to "comments from multiple members of the public indicat[ing] they would be afraid to walk on the [t]rail if snowmobiles, and even horses, were allowed."

¶66     Although the circuit court initially granted the Friends certiorari relief on this basis, the court's amended decision and order concluded that the January 19, 2021 trail plan complied with WIS. ADMIN. CODE § NR 1.61.  The court explained that the MOU stated that "walking must be allowed 'on the property,'" but the MOU did not say that walking must be permitted "on the trail."  The County argues that we should similarly conclude that the plan complies with § NR 1.61.

¶67     We agree with the County.  The Friends' argument that the trail will be too dangerous for walking asks us to substitute our view of the evidence for the

---

[17]  The Friends contend that they have standing because WIS. ADMIN. CODE § NR 1.61 "creates a legally protectible interest that state trails on DNR land will be kept open for traditional outdoor recreational uses, including walking."  We assume without deciding that the Friends have standing to seek certiorari relief on this issue.

County's, which is not permissible in a certiorari action. *See **Ottman***, 332 Wis. 2d 3, ¶53 ("A certiorari court may not substitute its view of the evidence for that of the municipality."). Instead, we conclude that the County is entitled to the presumption of correctness regarding whether it complied with the terms of the MOU that relate to WIS. ADMIN. CODE § NR 1.61.

### E.  Other Federal and State Standards

¶68     The County also challenges the circuit court's decision to remand on the ground that the record did not demonstrate that the plan met or exceeded federal and state standards, as required by the MOU.  The County contends that the court did not identify "any standards mandated by state or federal law[] with which the final plan does not comply."  The Friends argue that "the County's failure to follow applicable standards, whether required by law or not, demonstrates that the County's decision was arbitrary and capricious and unsupported by substantial evidence."

¶69     We do not, however, see any developed argument from the Friends that this aspect of the circuit court's certiorari decision was correct.  We therefore deem the Friends to have conceded this issue. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute.").

### III.  Did the County's decision reflect its will and not its judgment?

¶70     The County argues that the circuit court erred by determining that the County's decision approving the plan reflected its will and not its judgment. The Friends contend that we should affirm the court's determination that they are

entitled to certiorari relief on this ground. We need not address this argument, given that we are affirming the circuit court's order remanding this matter to the County for a new decision that follows adequate public participation.

## IV. Was the County's decision supported by substantial evidence?

¶71 The County argues that its decision was supported by substantial evidence. The Friends contend that the County's decision is incompatible with the record evidence on a variety of issues, including safety and economic development. We need not address this argument because we are affirming the circuit court's order remanding the matter to the County for a new decision.

## CONCLUSION

¶72 For the foregoing reasons, we conclude in Appeal No. 2024AP1119 that the Friends are entitled to certiorari relief on the issue of whether the County proceeded on a correct theory of law when it approved the revised trail plan on January 19, 2021. Specifically, in Resolution 28-18, the County bound itself to a planning process that was "consistent with [WIS. ADMIN. CODE ch. NR 44] to the extent practicable and the" MOU. In turn, the MOU required the County to "make its best efforts to comply with the intent of [ch. NR] 44 … to the extent practicable as it relates to public participation" and further required that the County "participate in or conduct public meetings … for any major changes to the trail plan." By approving the revised trail plan without following through on these commitments (especially those regarding the allowance for adequate public participation), the County did not properly apply the relevant legal authorities. *See Edward Kraemer & Sons*, 183 Wis. 2d at 8-9. Given our resolution of Appeal No. 2024AP1119, we dismiss Appeal No. 2023AP1561 as moot.

*By the Court.*—Order in Appeal No. 2024AP1119 affirmed; Appeal No. 2023AP1561 dismissed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.